UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | |
| ) | |
| Plaintiff,       ) | |
| ) | No. 4:16-CR-00252-1 RLW |
| v.       ) | |
| ) | |
| DAVID A. PETER,       ) | |
| ) | |
| Defendant.       ) | |

### SENTENCING MEMORANDUM OF
### DEFENDANT DAVID A. PETER

**Introduction**

Defendant, David A. Peter, respectfully requests that this Court sentence him to probation in this case. As set forth in the Presentence Investigation Report ("PSR"), the period of probation should be not less than one nor more than five years, pursuant to 18 U.S.C. § 3561(c)(1). *See* PSR at ¶77.

Dr. Peter agrees that the advisory sentencing guidelines range, both as set forth in the Plea Agreement and as calculated in the PSR, is (prior to consideration of any downward departure motions or requests for a variance) zero to six months, based on a total offense level of 6 and a criminal history score of 0 (category I).

The Government does not oppose a sentence of probation in this case, as it is within the guideline range. *See* Plea Agreement, § 2; PSR, at ¶ 3. Dr. Peter respectfully suggests that he be sentenced on the low range of the guidelines and, further, that application of the sentencing factors set forth in 18 U.S.C. § 3553(a) to the facts and circumstances of this case further solidifies the merit of Dr. Peter's request for probation.

## Discussion

Congress has mandated that a sentencing court "impose a sentence sufficient, *but not greater than necessary*, to" achieve certain specified objectives of sentencing. *See* 18 U.S.C. § 3553(a) (emphasis added).

Prior to 2005, the Court, in general, was required to impose a sentence in accordance with the federal sentencing guidelines. However, "[i]n *United States v. Booker*, 543 U.S. 220, 224, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court ruled that mandatory application of the Guidelines based on judicially-found facts violated defendants' Sixth Amendment rights." *United States v. Wadena*, 470 F.3d 735, 737 (8th Cir. 2006). Accordingly, "the Guidelines are no longer mandatory." *United States v. Ture*, 450 F.3d 352, 356 (8th Cir. 2006).

The Court of Appeals has laid out the methodology that a sentencing Court should follow, post-*Booker*, when determining the sentence to impose:

> In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines . . . . Next, the district court should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range . . . . The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" . . . . The calculation of the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" . . . . Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a "variance" outside the final advisory Guidelines sentencing range . . . . As opposed to a "departure," a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a).

*United States v. Lozoya,* 623 F.3d 624, 625-26 (8th Cir. 2010) (citations omitted).

I.      **GUIDELINES SENTENCING RANGE**

Dr. Peter agrees that the sentencing guidelines range, both as set forth in the Plea Agreement and as calculated in the PSR, is zero to six months, based on a total offense level of 6 and a criminal history score of 0 (category I).  Here, there is no basis for a departure.  A sentence of probation falls within the guidelines range.

III.    **CONSIDERATION OF FACTORS PURSUANT TO 18 U.S.C. § 3553(a)**

As set forth above, after the Court calculates the guidelines range, it must determine the actual sentence by applying the factors listed in 18 U.S.C. § 3553(a).  *Lozoya*, 623 F.3d at 626.[1]  Application of the statutory factors to the circumstances of this proceeding should further lead this Court to sentence Dr. Peter to probation.

1.  **Offense and offender characteristics (18 U.S.C. § 3553(a)(1))**

While Dr. Peter does not deny or minimize the seriousness of the offense he committed, he does respectfully submit that a number of factors present in this case mitigate the harshness of the sentence this Court should impose.

Dr. Peter is a recovering addict.  His addiction stems from the medication he took for pain sustained over a decade ago.  PSR, ¶ 48.  To address his addiction issues, Dr. Peter currently attends at least three group meetings a week, submits to random drug testing on an almost-weekly basis, and is engaged in therapy to address and overcome this addiction.  PSR, ¶ 53.  His

---

[1] The Supreme Court has summarized the section 3553(a) factors as follows:  (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, and (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.  *See Rita v. United States*, 551 U.S. 338, 347-48 (2007).

3

addition, while not an excuse for his behavior, was the primary contributing factor in a series of poor decisions, which culminated in this case.

On December 22, 2015, Dr. Peter was requested by his employer to participate in a meeting.  When Dr. Peter arrived, two DEA agents were waiting to meet with him.  The agents requested Dr. Peter's cooperation.  Dr. Peter voluntarily surrendered his DEA license number and voluntarily spoke with the agents.  PSR, ¶ 59.

Dr. Peter spent the next six days going through withdrawal at his home with his AA sponsor.  He admitted himself into an inpatient treatment center, Positive Sobriety Institute, on December 28.  He actively participated in the program through his discharge on February 10, 2016.  PSR, ¶ 49.  His physician at Positive Sobriety Institute, Dr. Daniel Angres, reported that Dr. Peter is "highly motivated" and that his "long term prognosis [i]s excellent."  *See* Exhibit A.

After his discharge from Positive Sobriety Institute, Dr. Peter sought out the assistance of Missouri Physicians Health Program (MPHP), an organization sponsored by the Missouri State Medical Association and organized to support physicians with substances abuse issues and other concerns.  PSR, ¶ 53.  Pursuant to MPHP, Dr. Peter entered into a five-year monitoring program.  Under this program, he attends AA and NA meetings at least three times a week, participates in weekly MPHP-sponsored meetings, and submits to random periodic drug tests and monthly monitoring on an individual basis.  *Id.*  Dr. Peter also participates in additional drug testing and treatment under the terms of his bond conditions.  *Id.*  Since the beginning of the year, Dr. Peter has been committed to maintaining his sobriety and addressing the issues that have resulted in this case.  He spends a significant amount of time each week toward working on what will likely be a lifelong effort.  Dr. Martin Smoller, Dr. Peter's mentor, writes about his recent discussion

4

with Dr. Peter: "he expressed his remorse and shame that he deeply felt.  He [is] committed to prevent a relapse." *Letter of Martin B. Smoller*, Exhibit B.

In addition, Dr. Peter is particularly concerned about the impact of the present situation upon his children, and it is largely for their sake that he requests a sentence of probation.  Dr. Peter and his estranged wife have two children, ages 7 and 9, and he is worried about the effect upon his children were he to be absent from their lives for any period of time.

The record in this case reveals the individual now before the Court, Dr. Peter, to be a good person who suffers from an addiction and made a serious mistake.  Colleague Dr. James Schaberg writes: "The care he gave and the compassion he showed will never be matched... [h]e is a good man." *Letter of Martin B. Smoller*, Exhibit B.  Dr. Peter's sister, Jean Normansell, believes that his "recognition of his addiction and the impact it has had on others, his full cooperation with the authorities, and his strong commitment to his sobriety are clear reflections of the values which he exemplifies." *Letter of Jean Normansell*, Exhibit B.  And, former supervisor and friend, Mark Renken, states: "I have heard from hundreds of his patients who expressed their concern for Dave as he has dealt with the mistake that he has made.  All of these people believe, like I do, that Dave is a tremendous individual, of high character, who has made a horrible mistake." *Letter of Mark Renken*, Exhibit B.  All in all, Dr. Peter suggests that 18 U.S.C. § 3553(a)(1) (circumstances of the offense and history and characteristics of the defendant) support his request for a sentence of probation in this case.

### 2. Need for sentence to promote just punishment, deterrence, incapacitation and rehabilitation (18 U.S.C. § 3553(a)(2))

A sentence of probation in this case would promote the objectives of sentencing as identified in 18 U.S.C. § 3553(a)(2).  First, such a sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment.  *See* 18 U.S.C. §

3553(a)(2)(A).  The Supreme Court, while acknowledging that a custodial sentence is more severe than probation, has stated, "Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."  *Gall v. United States*, 128 S.Ct. 586, 595 (2007).  Thus, the Supreme Court appears to have rejected a view that dismisses a sentence of probation as an overly-lenient slap on the wrist.  *See id.* at n.4 ("[p]robation is not granted out of a spirit of leniency . . . probation is not merely 'letting an offender off easily'") (quoting Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957)).

    The humiliation that Dr. Peter has suffered as a result of standing before the Court, admitting he violated the law, and being fingerprinted and photographed by the United States Marshals, constitutes significant punishment for a man with Dr. Peter's background.  In addition, he will most likely suffer severe repercussions with respect to his medical license and ability to practice.  He has consistently accepted responsibility for the offense – from speaking openly with the DEA agents and voluntarily surrendering his license to entering into plea discussions early in the case, Dr. Peter has, from the start, accepted responsibility for his actions.  Indeed, Dr. Peter's brother noted: "Never once... have I heard him blame anyone, other than himself, for his illness and current situation."  *Letter of John R. Peter, MD*, <u>Exhibit B</u>.  Dr. Peter understands the gravity of the offense and is committed to his rehabilitation and to assuring that it will never happen again.

    A sentence of probation, under the facts and circumstances of the present case, would afford adequate deterrence and protect the public from further crimes.  *See* 18 U.S.C. § 3553(a)(2)(B).  From the materials in the record, this Court should have little difficulty assessing as low to remote the likelihood that Dr. Peter will ever offend again.  The background

6

information in the PSR does not in any way suggest that Dr. Peter's character is of such a nature to predispose him to commit crimes, and the letters written on his behalf, *see* Exhibit B, show the opposite.

In addition, nothing in the record before the Court suggests that Dr. Peter requires "needed educational or vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2)(D), that only a sentence of incarceration can provide.

### 3. Kinds of sentences available (18 U.S.C. § 3553(a)(3))

A sentence of probation is available in this case. As the PSR correctly indicates, Dr. Peter "is eligible for not less than one nor more than five years' probation." PSR, ¶ 76.

### 4. Sentencing Guidelines, including policy statements (18 U.S.C. § 3553(a)(4) and (5))

As set forth herein, a sentence of probation would be a within-Guidelines sentence. PSR, ¶ 76.

### 5. Need to avoid unwarranted sentencing disparity (18 U.S.C. § 3553(a)(6))

Based upon the undersigned's experience, Dr. Peter respectfully suggests to the Court that a sentence of probation in this mail fraud case would not be out of line compared to sentences imposed for similar offenses, particularly cases in which the defendant has provided substantial assistance to the Government.

### 6. Need to provide restitution (18 U.S.C. § 3553(a)(7))

Dr. Peter is committed to making a restitution payment as ordered in this matter.

## Conclusion

For the foregoing reasons, Dr. Peter respectfully suggests that all of the relevant factors, facts, and circumstances of this matter, demonstrate that a sentence of probation represents a

sentence sufficient but not greater than necessary to carry out the statutory objectives of sentencing.

                                      **CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

                                      */s/ William S. Margulis*
                                WILLIAM S. MARGULIS, #37625MO
                                MICHELLE F. SCHWERIN, #62882MO
                                7701 Forsyth Blvd., 12th Floor
                                St. Louis, MO 63105
                                Telephone: 314.721.7701
                                Facsimile: 314.721.0554
                                wmargulis@capessokol.com
                                schwerin@capessokol.com
                                ATTORNEYS FOR DEFENDANT

## Certificate of Service

    I hereby certify that on September 14, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney and all other counsel in this case.

                                        */s/ William S. Margulis*